J. W. Anders, *Appellant*, v. The Atchison, Topeka & Santa Fe Railway Company, *Appellee.*

No. 16,500.

Proximate Cause — *Injury to Employee — Question of Fact.* Evidence that a brakeman was injured by falling over a barbed wire reel which was in his path, and which he saw, but only dimly, owing to the bad condition of his lantern, held to justify submitting to the jury the question whether the injury was occasioned by the want of a better light.

Appeal from Shawnee district court. Opinion filed July 9, 1910. Reversed.

*Joseph G. Waters, John C. Waters, John J. Schenck,* and *W. I. Jamison,* for the appellant.

*William R. Smith, O. J. Wood,* and *Alfred A. Scott,* for the appellee.

*Per Curiam:* J. W. Anders sued the Atchison, Topeka & Santa Fe Railway Company on account of an injury received while in its employ as a brakeman. A demurrer to his evidence was sustained, and he appeals. The negligence complained of was the furnishing of a poor quality of oil, that smoked up his lantern and caused it to give but a dim light. The only question presented is whether the evidence had any tendency to show that the injury was occasioned by the defective light.

The substance of the plaintiff's testimony, so far as it bears upon the question, may be thus stated: In the performance of his duties he was walking east between two parallel tracks, about six feet apart, in a path about eighteen inches wide, on each side of which the ballast rose at a slant to a height of about a foot. His train was moving slowly east on the south track. He saw, about two steps ahead of him, some kind of an obstruction in the path which looked to him like a piece of wood of some kind. It was in fact a barbed wire

spool, or reel, about sixteen inches long and a foot high, the ends in the form of a cross, connected by strips running lengthwise; but at the time he was unable to tell what it was. The narration of what followed is given in his own language:

"I saw an obstruction of some kind, but with the dim light I could n't distinguish exactly what the article was, until I stepped to one side and my foot rolled on a pebble or cinder or something of the kind, and it threw me to one side and my right foot struck the obstruction and threw me under the train—my right arm went under the train. . . . I did n't know exactly when I stepped on it, but after I fell I could distinguish what it was. . . . I fell over this spool. . . . It threw me against the train. . . . When I struck the train it turned me around to my left side to the train, as I fell on my back and the wheel passed over my arm."

The record of a part of his cross-examination reads:

"Ques. Now, when you started to walk around it, then you came to it? Ans. When I first saw it I started to go around it.

"Q. Which way did you start to go around it? A. To the north side.

"Q. And as you started to go around it, which one of your feet turned on a stone? A. I stepped with my left foot up on the ballast, and started to step over it with my right foot; it was the left foot that slipped.

"Q. You stepped up on the ballast with your left foot? A. Yes.

"Q. Intending to step over this barbed wire spool or obstruction with your right foot? A. No, sir; I started to step around it.

"Q. When you stepped up on this ballast with your left foot, your left foot turned under a stone and you fell over on this obstruction; is that the way it was done? A. My right foot struck the obstruction and my left foot turned on the ballast.

"Q. Your right foot as you were going around it struck the obstruction? A. Yes.

"Q. And your left foot turned on this ballast? A. Yes.

"Q. And you fell over this obstruction? A. Yes."

The defendant maintains that the plaintiff's injury was not occasioned by its failure to provide him with a better light, saying in its brief:

"By the aid even of the dim light furnished by his lantern, he had all the notice and knowledge of the obstruction in his path that he could have had if his lantern had been burning brightly. He knew that the obstruction was there and tried to avoid it, but in doing so his foot turned on a piece of rock ballast, he stumbled over the obstruction and fell in such a way that his arm got under the wheels and was run over. . . . As he saw the obstruction in plenty of time to have avoided it with the aid of such light as his lantern afforded, he can not claim that the failure of the company to furnish him a better light in any degree caused or occasioned the accident."

The court, however, is of the opinion that the jury might reasonably have concluded that if the plaintiff's lantern had given as much light as it should have done he could have seen, not only that there was an obstacle in the path, but of just what it consisted; that if he had been able to see it plainly he could have passed it without injury, either by stepping over it, or, if he still thought it necessary to go around it, by preventing his right foot from striking it when his left foot slipped. The fact that he fell over the reel, when he did not know what it was and could see it only dimly, does not prove that he could not readily have avoided it if he could have seen it distinctly. On account of its irregular shape it may have presented a dangerous obstacle to a passer-by in a dim light, although harmless in daylight or when there was sufficient illumination to disclose the details of its construction.

The judgment is reversed and a new trial ordered.